GRITT, JUDGE:
Claimant brought this claim for property damage to her real estate which she alleges occurred as a result of respondent’s negligent maintenance of a drainage system. Claimant’s property is located in Harrison County. Claimant leased her property to tenants until some time in 1999. After the completion of the hearing of this claim on October 31 and November 1,2006, the Court took a view of claimant’s property to better understand the lay of the land and the drainage structures. Upon consideration of the testimony taken and the view of the property, the Court is of the opinion to deny this claim for the reasons more fully stated below.
Claimant’s property is located on Route 36/4, locally known as Poling Road, near West Milford in Harrison County. Claimant testified that she bought the property in 1987. The incident giving rise to this claim occurred in 1999. Mrs. McMillion alleges that respondent cut back a bank which disturbed trees and rocks causing an influx of water onto her property. She testified that water seeped through the rocks in the bank below the road, and then flowed onto her property. She also testified that around this same time respondent was replacing a drainage system at the entrance to a development near her property which also resulted in a large amount of water being directed onto her property. Claimant testified that water flows out of the subdivision where it joins with water that drains off of Coal Haul Road. This water then flows under Coal Haul Road into a culvert where it flows along Route 36 and then through a culvert under Route 36 to a ditch behind her house where it flows to a culvert under Route 36/4 and eventually it flows into the West Fork River. Mrs. McMillion testified that prior to 1999 there was dampness and some drainage onto her property, but she described it as being at a tolerable level. She further stated that due to the flooding that resulted after 1999, the house on her property developed black mold such that she was no longer able to rent the property. Mrs. McMillion also testified regarding two culverts located approximately *23 fifty yards down stream from her property. She stated that these culverts were situated one on top of the other. The bottom culvert was a cement culvert that was completely stopped up on the intake end, while the other is a twenty-four inch metal culvert.
Douglas Pence, a property and casualty claims adjuster, testified that in 1999, prior to the flooding, claimant’s property was worth approximately $35,000.00. Mr. Pence stated that due to the black mold, the house is uninhabitable. In his opinion the approximate value of the property, including the land and the structure thereon, is now $5,000.00.
The position of the claimant is that the respondent negligently caused a large amount of water to flow onto her property, damaging the house and the land. The claimant further avers that respondent did not restore the bank that it had worked on despite its assurances that repairs would be made. She also is of the opinion that there was a breach of contract on the part of the respondent based upon her allegation that respondent had agreed to take certain actions with respect to a bank adjacent to the roadway, which did not occur.
The position of the respondent is that it was not responsible for the flood related damage that was caused to claimant’s property as the property is prone to flooding. Respondent further contends that there was no written agreement between the claimant and itself to repair or restore any bank and that, therefore, there was no breach of any contract on its part.
Doug Kirk, a professional engineer employed by respondent, testified at the hearing of this matter. Mr. Kirk stated that claimant’s house sits in a five hundred year flood plain so there is a two percent chance that the area would be flooded by the West Fork River in any given year. He described the claimant’s property as being situated in a narrow ravine and that approximately four hundred fifty four (454) acres drain into the stream that flows past claimant’s property in this ravine. Mr. Kirk stated that claimant’s house is impacted by this stream flooding because the house is so close to the stream both in terms of horizontal location as well as its elevation. He further concluded that the two culverts that are located on top of each other have no effect on the water surface elevation at the house since the house is at a substantially higher elevation than the roadway and, therefore, any flooding from this culvert would flow over the road before it reaches claimant’s house. Mr. Kirk also stated that any work that respondent completed in 1999 would not have changed the amount of water that flows into the ravine where claimant’s property is located. He testified that work done reshaping the bank and cutting trees along the hillside between Route 36 and Route 36/4 would have no discernible effect on the flow of the water either above the ground or below the ground. Mr. Kirk stated that in his opinion, this property is affected by groundwater flow because it is located between two hillsides in a narrow ravine and that it is affected by flooding from the stream because of its close proximity to the stream. He further stated that because the property is at a low elevation just above the streambed elevation and just above the West Fork River elevation, the ground in the area is prone to being saturated with water.
This Court has held that respondent has a duty to provide adequate drainage of surface water and that any drainage devices must be maintained in a reasonable state of repair. Haught vs. Dept. of Highways, 13 Ct. Cl. 237 (1980). In claims of this nature, the Court will examine whether respondent negligently failed to protect a clamant’s property from foreseeable damage. Rogers vs. Div. of Highways, 21 Ct. Cl. 97 (1996).
In the instant claim, the claimant has failed to establish that respondent maintained the drainage structures on Route 36 or Route 36/4 in Harrison County in a *24 negligent manner. The terrain in this area of Route 36 and Route 36/4 forms a natural drainage area onto claimant’s property. The Court concludes from the testimony, the documentary evidence and the view of the property, roads and drainage structures, that the water flowing near claimant’s property and at times flooding claimant’s property would have flowed into this same area regardless of what actions respondent undertook in 1999 to either reshape the bank or change the drainage system. Further, there was no evidence to establish that a contract existed between claimant and respondent to perform any work in the area of claimant’s property. Consequently, there is insufficient evidence of either negligence on the part of the respondent or a breach of a contract upon which to base an award.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.